**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID VANISON, | |
| *Plaintiff*, | |
| v. | Civil Action No. 25-3367 (TJK) |
| UBER TECHNOLOGIES, INC. | |
| *Defendant*. | |

<u>**MEMORANDUM ORDER**</u>

David Vanison, proceeding pro se, sued Uber after the company deactivated his driver account and banned him from the platform. He alleges that Uber discriminated against him based on his race. Uber moves to compel arbitration and stay the case, arguing that Vanison accepted Uber's Platform Access Agreement, which included a provision requiring Vanison to resolve his claims via arbitration. Vanison opposes arbitration, contending that the provision's terms are procedurally and substantively unconscionable. The Court finds that Vanison agreed to arbitrate his claims against Uber, and in doing so, agreed to delegate threshold questions about the applicability of the arbitration provision to the arbitrator. For that reason, it will grant Uber's motion, compel Vanison to arbitrate, and stay the case.

**I.      Background**

Vanison alleges that he worked as an Uber driver for five years and completed more than 10,000 trips. ECF No. 1 at 9. In August 2024, an Uber customer reported Vanison for "ma[king] an unsafe driving maneuver." *Id.* at 8. That same month, Uber received a second report relating to Vanison, this time asserting that he "appeared to be under the influence of drugs or alcohol." *Id.* at 6. Uber deactivated his driver account for two days. *Id.* at 6–7. In December 2024, a similar

incident occurred in which Uber again received a report that Vanison was driving under the influence. *Id.* at 7. Uber again placed Vanison's driver account on a two-day hold. *Id.* at 7–8. Finally, in January 2025, Uber deactivated Vanison's account, citing "unsafe driving." *Id.* at 8. Uber took these steps despite Vanison having denied each allegation. *Id.* at 6–8.

Vanison sued Uber in September 2025. ECF No. 1. He alleges that the suspensions and ultimate deactivation of his Uber driver account constitute race-based discrimination under Titles VI and VII of the Civil Rights Act of 1964. *Id.* at 3; ECF No. 11 at 2. He seeks back pay and lost wages. ECF No. 1 at 10.

After first answering the Complaint, Uber now moves to compel arbitration and stay the case. ECF No. 10. It attests that Vanison, before working as an Uber Driver in 2019, accepted Uber's Platform Access Agreement. ECF No. 10-2 at 3. Uber periodically revises its Platform Access Agreement—and it says that Vanison most recently accepted an updated version in January 2022. *Id.* at 4–5. The 2022 Platform Access Agreement ("2022 Agreement"), contains an arbitration provision, as did all prior versions of the Platform Access Agreement that Vanison accepted. *See* ECF No. 10-2 at 74. The arbitration provision directed Drivers to

> REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL RE-QUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BA-SIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PRO-VIDED BELOW. . . . IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND THEREFORE AGREE TO ARBITRATION WITH US, YOU ARE AGREEING IN ADVANCE, EXCEPT AS OTHERWISE PROVIDED BE-LOW, THAT YOU WILL NOT PARTICIPATE IN AND, THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RE-LIEF IN CONNECTION WITH, ANY SUCH CLASS, COLLECTIVE, COORDI-NATED, CONSOLIDATED, AND/OR REPRESENTATIVE LAWSUIT. THIS ARBITRATION PROVISION, HOWEVER, WILL ALLOW YOU TO BRING INDIVIDUAL CLAIMS IN ARBITRATION ON YOUR OWN BEHALF.

*Id.* The arbitration provision stated that "[e]xcept as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship

2

with us or . . . termination of that relationship, and survives after the relationship terminates." *Id.* The provision continued, "[t]his Arbitration Provision applies to all claims whether brought by you or us . . . [and] requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial." *Id.* at 74–75. The arbitration provision also contained a delegation clause providing that disputes subject to arbitration "include without limitation disputes arising out of or relating to the interpretation, application, formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision." *Id.* at 75.

The 2022 Agreement also included instructions for how drivers could "opt out" of the arbitration provision. ECF No. 10-2 at 86. It instructed that drivers could, within 30 days of accepting the agreement, "send an electronic email from the email address associated with your driver account to optout@uber.com, stating your intent to opt out of this Arbitration Provision." *Id.* Uber asserts, however, that Vanison did not opt out of the 2022 Agreement's—or any other agreement's—arbitration provision. *Id.* at 5.

In moving to compel arbitration of Vanison's discrimination claims, Uber relies on the 2022 Agreement's arbitration provision. ECF No. 10-1 at 13. It argues that it entered into a valid, binding agreement to arbitrate with Vanison that is governed by the Federal Arbitration Act (FAA). *Id.* And, it contends, the types of claims that Vanison brought against Uber—related to Vanison's "relationship with [Uber]" and the "termination of that relationship"—fall under the ambit of the arbitration provision. *Id.* at 6–7; *see* ECF No. 10-2 at 76. Uber further argues that the arbitration provision "has a clear and unambiguous delegation clause" that requires that even threshold questions about the agreement's validity be submitted to the arbitrator. ECF No. 10-1 at 7. Uber asks the Court to compel Vanison to arbitrate his claims against it and stay the case while arbitration

3

proceeds. *Id.* at 16. Vanison opposes the motion to compel. ECF No. 11. While he does not contest that he agreed to the 2022 Agreement and the arbitration provision, he argues that he should still not be subject to arbitration because the provision is substantively and procedurally unconscionable, including because it was one-sided, unduly harsh, and because the opt-out provision was limited in scope. *Id.* at 1–2.

## II.    Legal Standard

By enacting the FAA, Congress adopted "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Arbitration is a matter of contract. The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court must stay litigation "upon being satisfied that the issue" is "referable to arbitration" under the agreement. *Id*. § 3. A court, in response to a motion from a party resisting arbitration, must compel arbitration "in accordance with the terms of the agreement" when the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id*. § 4. When presented with such a motion, the court should be mindful that the FAA creates a strong presumption favoring the enforcement of arbitration agreements, and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

Courts consider motions to compel arbitration as "a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Aliron Int'l, Inc. v. Cherokee Nation Indus*., 531 F.3d 863, 865 (D.C. Cir. 2008) (cleaned up). "Although a motion to compel arbitration is similar to a motion for summary judgment in framing the burden of proof, the two motions are of course not identical." *Jin v. Parsons Corp.*, 966 F.3d

4

821, 827 (D.C. Cir. 2020).  In considering a motion to compel arbitration, the court must consider arbitrability at the outset of litigation; it "cannot postpone deciding the question of arbitrability *vel non* and allow the case to proceed on the merits." *Id*.

"Because the party seeking to enforce an arbitration agreement bears the burden of proving that the other party agreed to arbitrate, the party seeking to compel arbitration must first present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 9 (D.D.C. 2021) (internal citations and quotation marks omitted).  "The burden then shifts to the non-moving party to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Rule 56." *Id*. (internal citations and quotation marks omitted).  "The court must grant summary judgment with respect to the formation of an arbitration agreement if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. (internal citations and quotation marks omitted).  But if the court concludes that a "genuine dispute of material fact exists as to the making of the arbitration agreement, including whether the parties assented to the agreement," the case must "proceed summarily to trial solely on the issue of arbitrability." *Jin*, 966 F.3d at 827 (internal quotations omitted).

## III.    Analysis

In opposing arbitration, Vanison does not dispute that the parties formed an agreement to arbitrate—for example, by arguing that he did not accept the 2022 Agreement or that he opted out of the arbitration provision—an issue that would unquestionably be reserved for the Court, not an arbitrator, to decide. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); 9 U.S.C. § 4.  The Court finds that Uber has met its burden to show the existence of a "meeting of

the minds" between the parties on the issue of submitting Vanison's claims to arbitration.  *Aliron Int'l, Inc.*, 531 F.3d at 865.[1]

Instead, Vanison argues that the Court should deny Uber's motion and proceed to decide his claims because the arbitration provision is procedurally and substantively unconscionable and the Court should not enforce it.[2]  In general, Vanison is correct that "a gateway dispute about whether the parties are bound by a given arbitration clause raises 'a question of arbitrability' for a Court to decide.'"  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–46 (1995)).  In response, though, Uber argues that the arbitration provision also contains a "clear and unambiguous delegation clause" which requires Vanison to submit all "threshold questions" about the provision's validity—including whether it is unconscionable—to the arbitrator.  ECF No. 10-1 at 7.  Uber is right.

"A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all."  *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).  The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).  "But the Supreme Court has

---

[1] Vanison also does not dispute that his claims—that Uber discriminated against him based on his race when it placed a hold on and then terminated his driver account—fall under the ambit of the arbitration provision.

[2] Vanison also says he opposes arbitration because, he claims, Uber's "[c]ustomer service [a]gents [b]roke" the law and "[d]iscriminated against [him] based on [his] [r]ace."  ECF No. 11 at 1–2.  But this argument—which merely reasserts Vanison's allegations of discrimination—does not address the merits of Uber's motion.  Uber does not question whether Vanison may assert discrimination claims against it, only whether they must be arbitrated.  *See* ECF No. 10.

'added [the] important qualification' that there must be 'clear and unmistakable' evidence that 'the parties agreed to arbitrate arbitrability.'" *Caremark*, 43 F.4th at 1029 (quoting *First Options of Chi.*, 514 U.S. at 944).  Recall the delegation provision at issue:

> This Arbitration Provision applies to all claims whether brought by you or us, except as provided below.  This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial.  Except as provided below regarding the Class Action Waiver and Representative Action Waiver, *such disputes include without limitation disputes arising out of or relating to the interpretation, application, formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision.*

ECF No. 10-2 at 74–75 (emphasis added).

The Court has little trouble concluding that this delegation provision is clear and unmistakable evidence that the parties agreed to arbitrate threshold questions of arbitrability, including whether the arbitration provision is unconscionable and so should not be enforced.  Thus, the Court will grant Uber's motion to compel arbitration and stay the case.

## IV.    Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Uber's Motion to Compel Arbitration, ECF No. 10, is **GRANTED**.  It is further **ORDERED** that Vanison's claims shall be submitted to arbitration in accordance with the 2022 Platform Access Agreement.  It is further **ORDERED** that the parties shall file a joint status report within 14 days of the completion of arbitration.

It is further **ORDERED** that the case is **STAYED** until further order of the Court.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 12, 2026

7